United States v. Fofanah

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2013

(Argued: October 25, 2013　　　　　　　Decided: September 2, 2014)

Docket No. 12-4617

_____

UNITED STATES OF AMERICA,

*Appellee,*

v.

ABDULAI FOFANAH, AKA FODAY,
AKA FODAY FOFANAH,
AKA FODAY OSMAN FOFANAH,

*Defendant-Appellant*.

_____

Before: KATZMANN, *Chief Judge*, LEVAL and POOLER, *Circuit Judges*.

Judge LEVAL concurs in a separate opinion.

Appeal from a November 13, 2012 judgment entered in the United States District Court for the Southern District of New York (John F. Keenan, *J.*), convicting defendant Abdulai Fofanah after a jury trial of conspiracy to transport stolen vehicles, transportation of stolen vehicles, and possession of stolen vehicles. Fofanah challenges on appeal the district court's issuance of a conscious avoidance jury instruction and two sentencing enhancements that the district court imposed, one for the use of sophisticated means and another for being in the business of receiving and selling stolen property. We conclude that even if the issuance of the conscious avoidance jury instruction was error, any such error was harmless. We further hold that Fofanah's challenges to his sentence must fail.

Affirmed.

Judge Leval joins in this per curiam opinion and concurs in a separate opinion.

_____

DAVID A. LEWIS, Assistant Federal Public Defender, Federal Defenders of New York, Inc., New York, NY, *for Defendant-Appellant*.

IAN P. MCGINLEY, Assistant United States Attorney, (Preet Bharara, United States Attorney for the Southern District of New York; Brent S. Wible, Assistant United States Attorney, on the brief), New York, NY, *for Appellee*.

*Per Curiam*:

Defendant Abdulai Fofanah appeals from a November 13, 2012 judgment entered in the United States District Court for the Southern District of New York (John F. Keenan, *J.*). Fofanah was convicted after a jury trial of conspiracy to transport stolen vehicles, in violation of 18 U.S.C. § 371; transportation of stolen vehicles, in violation of 18 U.S.C. § 2312; and possession of stolen vehicles, in violation of 18 U.S.C. § 2313. The district court sentenced defendant principally to 72 months of imprisonment and three years of supervised release.

On appeal, Fofanah challenges his conviction on the basis that it was impermissible for the district court to instruct the jury that it could convict him on the theory of conscious avoidance. Defendant also takes issue with the district court's imposition of sentencing enhancements for: (1) the use of "sophisticated means" under Section 2B1.1(b)(10)(C) of the Sentencing Guidelines of the United States Courts; and (2) being "in the business of receiving and selling stolen property" under Section 2B1.1(b)(4) of the Guidelines.

Because we conclude that any error in giving the contested jury instruction was harmless, and Fofanah's challenges to his sentence are without merit, we AFFIRM the judgment and sentence of the district court.

**BACKGROUND**

**I.     Facts**

Fofanah's offense conduct consisted of his leadership role in a scheme to ship high-priced stolen cars from New York through a port in New Jersey to be sold in Guinea, Africa. Around May 2011, Fofanah called a trucker named Fousseni Traore Sahm about shipping some containers of cars to Guinea. Sahm met with Fofanah, and another man named Habib Diallo, about shipping the cars. Sahm testified that at that meeting with Habib, Fofanah told Sahm that "they was going to do some containers and it's not going to be one or two, and then the car they was going to load, you know, are no good." Trial Tr. at 319. Sahm understood Fofanah to mean that the cars were stolen. At that meeting, Habib showed Sahm the titles that they were going to use to ship the cars, and the titles did not match the cars actually being shipped.

To carry out the shipments, Fofanah would provide Sahm with a booking number that Sahm would use to go to the port to retrieve an empty shipping

4

container. Sahm would bring the container to the Bronx, New York, and it would be loaded with cars in Fofanah's presence. Sahm testified that while the containers were being loaded Fofanah appeared "nervous" and was "always rushing us to finish the job and get out of there." *Id.* at 325.

Once the containers were loaded, Fofanah would pay Sahm, and Sahm or his drivers would take the containers back to the port to be shipped. Fofanah also provided Sahm with dock receipts, which are used to prove that the containers were delivered to the port. Sahm would obtain a stamp on the dock receipts and return the stamped receipts to Fofanah. During this time period that Fofanah had hired Sahm to transport the containers, Sahm was working with the police and he would contact the police when Fofanah wanted to load a container.

On June 14, 2011, Fofanah and Sahm met with a third man, who was an undercover officer. At that meeting, the undercover officer told Fofanah that the officer's brother (or the officer and his brother) wanted to start a car yard in Senegal, and the officer was seeking information from Fofanah about how to get titles for old cars. Fofanah told the undercover officer that it would be better to ship the cars to Guinea because in Senegal "you have to present the real title." Gov't's Add. at 4. Fofanah also advised the undercover officer about taking a

5

security system, such as LoJack, out of cars before shipping them to Africa. At that meeting, Fofanah offered to sell a car to the undercover officer.

At the time of his arrest on June 20, 2011, Fofanah had in his possession a shipping document that tied him to a container that he helped load with cars. He admitted upon arrest that Habib had told him that the cars were "bad," Trial Tr. at 146, and that Fofanah had participated in loading the containers. The cars that Fofanah was involved in loading into the containers were stolen.

## II. The District Court's Jury Instructions

At trial, the district court instructed the jury on what it means for a defendant to have actual knowledge of a fact. It also instructed the jury that the law "allows you to find that the defendant had knowledge of a fact when the evidence shows that he was aware of a high probability of that fact, but intentionally avoided confirming that fact. The law calls this 'conscious avoidance' or 'willful blindness.'" *Id.* at 647. The parties do not dispute that the district court gave the conscious avoidance instruction over Fofanah's objection.

## III. Fofanah's Conviction and Sentence

The jury found Fofanah guilty on all counts, and the district court sentenced him principally to 72 months of imprisonment and three years of

supervised release. The district court's sentence included two enhancements under the Guidelines, one for Fofanah's use of sophisticated means in the execution or concealment of the offense conduct, and the other for Fofanah being in the business of receiving and selling stolen property. Fofanah objected to each of those enhancements.

With regard to the sophisticated means enhancement, the court concluded that "[t]his was a very sophisticated scheme" that involved "17 stolen high-priced cars that were going to be resold in Africa." Sentencing Tr. at 13. The court noted that the scheme was organized, and included "substituting the stolen cars for the cars on the shipping documents." *Id.*

The district court imposed the enhancement for Fofanah being in the business of receiving and selling stolen property based on the "regularity and sophistication of Mr. Fofanah's activities" and the amount of property involved—17 high-priced cars. *Id.* at 7.

## DISCUSSION

## I. The Conscious Avoidance Jury Instruction

### A. Legal Standards

"'A conscious avoidance instruction permits a jury to find that a defendant had culpable knowledge of a fact when the evidence shows that the defendant intentionally avoided confirming the fact.'" *United States v. Kozeny*, 667 F.3d 122, 132 (2d Cir. 2011) (quoting *United States v. Ferrarini*, 219 F.3d 145, 154 (2d Cir. 2000)), *cert. denied sub nom. Bourke v. United States*, 133 S. Ct. 1794 (2013). The test for when a conscious avoidance charge is permissible has two prongs. First, the defendant must "assert[] the lack of some specific aspect of knowledge required for conviction." *Id.* (internal quotation marks omitted). Second, there must be an "appropriate factual predicate for the charge . . . , i.e., the evidence is such that a rational juror may reach the conclusion beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." *Id.* (internal quotation marks omitted); *accord United States v. Cuti*, 720 F.3d 453, 463 (2d Cir. 2013), *petition for cert. filed*, No. 13-1493 (U.S. Apr. 14, 2014); *United States v. Svoboda*, 347 F.3d 471, 480 (2d Cir. 2003).

"We review a claim of error in jury instructions *de novo*, reversing only where, viewing the charge as a whole, there was a prejudicial error." *United States v. Aina-Marshall*, 336 F.3d 167, 170 (2d Cir. 2003).

**B.    The Conscious Avoidance Jury Instruction Here Was Harmless**

Fofanah does not challenge the content of the district court's conscious avoidance jury instruction, but rather argues that the necessary factual predicate for giving the instruction was lacking. We need not decide whether the district court erred in issuing the conscious avoidance instruction in this case because, if the instruction was in error, any such error was harmless.

"[A]n erroneously given conscious avoidance instruction constitutes harmless error if the jury was charged on actual knowledge and there was overwhelming evidence to support a finding that the defendant instead possessed *actual* knowledge of the fact at issue." *Ferrarini*, 219 F.3d at 154 (internal quotation marks omitted). In this case, the district court gave the jury an instruction on actual knowledge, so the first requirement of the harmless error analysis was satisfied.

Second, there was overwhelming evidence that Fofanah had actual knowledge that the cars at issue were stolen. Fofanah told Sahm that the cars

9

were "no good," Trial Tr. at 319, which Sahm understood to mean stolen. Fofanah was present at a meeting where there was discussion of the fact that the titles for the cars being shipped did not match the actual cars, and he held title to one of the vehicles that appeared on a dock receipt that did not match the vehicle in the corresponding container.

At the time of his arrest, Fofanah was in possession of a shipping document that tied him to a container that he had assisted in loading with the cars. He admitted to participating in loading the shipping containers, and the cars that were loaded into the containers had all been stolen.

In addition, defendant engaged in a discussion with an undercover officer about how to ship cars abroad to Guinea as opposed to Senegal because it was less likely that real titles would have to be presented in Guinea. Fofanah also discussed with the undercover officer the practice of taking out the security system on a car before it is shipped to Africa, which is done to prevent law enforcement from locating the vehicle.

Accordingly, we hold that if the district court erred by instructing the jury on conscious avoidance in this case, any such error was harmless because the jury

was instructed on actual knowledge and there was overwhelming evidence that Fofanah possessed actual knowledge that the cars at issue were stolen.

**II.     The Sentencing Enhancements**

**A.     The Sophisticated Means Enhancement**

Over Fofanah's objection, the district court applied a sentencing enhancement pursuant to Section 2B1.1(b)(10)(C) of the Guidelines for the sophisticated means that defendant used with respect to the offense conduct. Fofanah argues that the district court misapplied that Guideline because his offense conduct was not sufficiently complex to merit the enhancement. We disagree.

**1. Legal Standards**

Section 2B1.1(b)(10)(C) of the Guidelines provides that: "If . . . the offense . . . involved sophisticated means, increase by 2 levels. If the resulting offense level is less than level 12, increase to level 12." The term "sophisticated means" is defined in the commentary to the Guidelines as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." USSG § 2B1.1(b)(10), comment. (n.8(B)).

The parties disagree about the standard of review that we should employ with respect to the district court's application of the enhancement for sophisticated means under Section 2B1.1(b)(10)(C). Relying on a case involving the application of an enhancement under Section 2T1.1 of the Guidelines, which concerns the use of sophisticated means in tax-evasion offenses, Fofanah argues that the standard of review is de novo, with due deference to the sentencing court's application of the Guideline. *See United States v. Lewis*, 93 F.3d 1075, 1080 (2d Cir. 1996); *see also United States v. Ojemen*, 465 F. App'x 69, 71 (2d Cir. 2012) (summary order) (applying the standard of review in *Lewis* to the use of sophisticated means under Section 2B1.1). The government contends that we should review the application of this enhancement for clear error because the district court's determination of the issue was primarily factual. *See United States v. Gotti*, 459 F.3d 296, 349 (2d Cir. 2006); *United States v. Vasquez*, 389 F.3d 65, 74–75 (2d Cir. 2004).

We need not wade into the nuances of the different standards of review because even on de novo review the sophisticated means enhancement was warranted in this case.[1]

---

[1] In other cases where the government has argued that the clear error standard governs a sophisticated means enhancement, we have taken a similar

**2. The Sophisticated Means Sentencing Enhancement Was Proper**

We have recognized that the creation and use of false documents, and other tactics to conceal offense conduct, are indicia of the sophistication of an offense. *Cf. United States v. Amico*, 416 F.3d 163, 169 (2d Cir. 2005) (applying the former Section 2F1.1 enhancement for sophisticated means).[2] Here, Fofanah was involved in the use of fraudulent titles to ship the cars at issue from the United States to Guinea, and he was listed as the owner of one of the cars on a fraudulent dock receipt. He also recommended the practice of disabling a car security system, such as LoJack, before shipping cars to Africa, which is done to prevent law enforcement from recovering the vehicle. He showed that he had developed a sophisticated knowledge of the respective means of shipping stolen cars to different African countries, explaining to the undercover officer that it was preferable to ship to Guinea rather than Senegal because in Senegal one needs to present real titles.

---

approach to the one we take here. *See Ojemen*, 465 F. App'x at 71 n.2; *United States v. Elia*, 392 F. App'x 883, 886 n.3 (2d Cir. 2010) (summary order); *United States v. Regensberg*, 381 F. App'x 60, 61 n.1 (2d Cir. 2010) (summary order).

[2] Section 2F1.1 of the Guidelines was deleted by consolidation with Section 2B1.1, effective November 1, 2001. *See* USSG § 2F1.1.

The repetitive and coordinated nature of Fofanah's conduct further reveal the sophistication of the means he employed. *See United States v. Finck*, 407 F.3d 908, 915 (8th Cir. 2005). Fofanah's offense conduct was repetitive, as it involved 17 stolen cars that were to be resold in Africa. Moreover, the scheme in which Fofanah participated involved coordination between Fofanah and Sahm to load vehicles into containers that were driven to a port where customs would have to be cleared. The fact that the scheme involved moving the cars across jurisdictions and then abroad is also some evidence of the scheme's sophistication.

Accordingly, the district court was correct to impose the sentencing enhancement based on the sophisticated means of Fofanah's conduct in this case.

**B.    The Enhancement for Being "in the Business of Receiving and Selling Stolen Property"**

Again over Fofanah's objection, the district court imposed a sentencing enhancement for defendant being in the business of receiving and selling stolen property under Section 2B1.1(b)(4) of the Guidelines. On appeal, defendant argues that the enhancement was not warranted because the evidence failed to show the requisite sophistication and regularity of his actions to substantiate the conclusion that he was "in the business," and there was no evidence that he was personally involved in the sale of stolen cars. We again disagree.

14

**1. Legal Standards**

Section 2B1.1(b)(4) of the Guidelines provides that: "If the offense involved receiving stolen property, and the defendant was a person in the business of receiving and selling stolen property, increase by 2 levels." The commentary to that section of the Guidelines provides a non-exhaustive list of factors for the sentencing court to consider: "(A) The regularity and sophistication of the defendant's activities. [¶] (B) The value and size of the inventory of stolen property maintained by the defendant. [¶] (C) The extent to which the defendant's activities encouraged or facilitated other crimes. [¶] (D) The defendant's past activities involving stolen property." USSG § 2B1.1(b)(4), comment. (n.5).

With respect to the standard of review governing this enhancement, the parties again disagree. Fofanah argues that our review should be de novo. *See United States v. Carson*, 125 F.3d 845, 1997 WL 609134, at *1 (2d Cir. 1997) (unpublished) (in the context of an enhancement under Section 2B6.1(b)(2) for being in the business of receiving and selling stolen property in crimes related to the alteration or removal of vehicle identification numbers, we review "factual findings for clear error, and [the] determination that those findings support the

15

challenged enhancement *de novo*"). The government argues for a clear error standard of review, as discussed earlier.

Again, we need not resolve this question because even under the de novo standard the district court correctly imposed the Section 2B1.1(b)(4) enhancement in this case.

### 2. The Enhancement for Being "in the Business" Was Warranted

With regard to whether Fofanah was in the business of receiving and selling stolen cars, the sophistication of Fofanah's offenses, which is discussed earlier, weighs in favor of the enhancement under Section 2B1.1(b)(4). *See* USSG § 2B1.1(b)(4), comment. (n.5(A)) (recognizing sophistication as a relevant factor).

The regularity of Fofanah's activities with respect to receiving and selling stolen vehicles also supports the enhancement at issue here. *See id.* (recognizing regularity as a relevant factor). Fofanah's knowledge about the practices of Senegal versus Guinea with regard to how rigorous each country is in demanding "real" titles for cars that are shipped to those countries suggests that he is a repeat player. Gov't's Add. at 5. In addition, Fofanah was involved in the process of shipping 17 stolen cars in various containers over the course of about

six weeks, which supports the district court's conclusion that this was not a "one-shot deal." Sentencing Tr. at 7.

The value of the stolen cars is another factor that weighs in favor of the enhancement. *See* USSG § 2B1.1(b)(4), comment. (n.5(B)) (recognizing the value of the stolen property as a relevant factor). Many of the stolen cars in this case were luxury vehicles, such as Range Rovers, Porsches, and BMWs, and the total value of the cars was over $500,000.

Fofanah also showed an interest in helping others engage in the type of car-shipping operation that he was involved in, which supports the enhancement. *See id.* § 2B1.1(b)(4), comment. (n.5(C)) (recognizing as a relevant factor the extent to which the defendant's activities encouraged other crimes). As noted earlier, Fofanah advised the undercover officer about shipping cars with bad titles to Guinea as opposed to Senegal, which showed that he had acquired a refined knowledge of the techniques for avoiding detection.

To the extent that Fofanah argues that there was insufficient evidence that he actually sold stolen vehicles, his contention is without merit. During the conversation that Fofanah had with Sahm and the undercover officer about removing a car security system and shipping cars to Guinea as opposed to

17

Senegal, Fofanah concedes that he stated he could sell the officer a Dodge Charger. At that meeting, Fofanah also discussed obtaining various cars for the officer to sell, and revealed his knowledge of how much could be made from those sales. Thus, even if we were to hold that an enhancement under Section 2B1.1(b)(4) would only be permissible where a defendant personally receives and sells stolen property—an issue we need not reach today—the enhancement would apply to Fofanah in this case.

Accordingly, the district court was correct to impose the sentencing enhancement for Fofanah being in the business of receiving and selling stolen property.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment and sentence of the district court.

Leval, *Circuit Judge*, concurring:

Fofanah contends his conviction should be overturned because the court instructed the jury on conscious avoidance of guilty knowledge (or willful blindness to the incriminating fact that the cars were stolen) when the evidence, according to his argument, did not allow for such a charge. He bases his argument on our opinion in *United States v. Ferrarini*, in which we discussed the standards for such an instruction and concluded it should not have been given. *See United States v. Ferrarini*, 219 F.3d 145, 157-58 (2d Cir. 2000). In our *per curiam* opinion, we do not confront his argument because it would make no difference to our disposition. Even if we were to conclude the charge was given in error, the error would be harmless. I agree with and join in the court's opinion. I write separately to refute his argument because it is based on misinterpretation of our precedent.

Fofanah reads *Ferrarini* as endorsing a standard that differs from the standard we have espoused in cases in which we upheld convictions concluding that the charge was properly given. His reading of *Ferrarini* is mistaken. *Ferrarini* did not endorse a standard at odds with our precedents. To the contrary, *Ferrarini* concluded the charge should not have been given because the court found that our standard for a conscious avoidance charge was not met, and the court rejected the government's argument seeking to justify the charge on the basis of evidence of actual knowledge. *Ferrarini* does not support the defendant's argument.

In *United States v. Svoboda*, decided subsequent to *Ferrarini*, we summarized the evidentiary requirements for a conscious avoidance charge. The defendants were charged with fraud in connection with the sale of securities. The defendant Robles appealed his conviction, contending the jury should not have been charged on conscious avoidance. 347 F.3d 471, 480 (2d Cir. 2003). Citing prior authority, including the *Ferrarini* opinion, on which Fofanah

1

erroneously relies, we reviewed what the evidence must show to justify giving the charge. We explained:

> A conscious avoidance instruction "may only be given if (1) the defendant asserts the lack of some specific aspect of knowledge required for conviction, . . . and (2) the appropriate factual predicate for the charge exists, i.e., 'the evidence is such that a rational juror may reach [the] conclusion beyond a reasonable doubt . . . that [the defendant] was aware of a high probability [of the fact in dispute] and consciously avoided confirming the fact[.]'" *Ferrarini*, 219 F.3d at 154 . . . . The second prong of this test thus has two components – there must be evidence that the defendant (1) was aware of a high probability of the disputed fact and (2) deliberately avoided confirming that fact. . . . Moreover, the second prong may be established where, "[a] defendant's involvement in the criminal offense may have been *so overwhelmingly suspicious* that the defendant's failure to question the suspicious circumstances establishes the defendant's purposeful contrivance to avoid guilty knowledge."

*Id*. We stressed as well that the conscious avoidance of guilty knowledge "may not be established by demonstrating that the defendant was merely negligent, foolish or mistaken." *Id.* at 481-82 (internal quotation marks omitted). Reviewing the evidence offered against Robles, we found that it conformed to the standard. We therefore upheld the propriety of the instruction and affirmed his conviction. *Id.* at 480-81, 485. (There was no evidence that Robles had taken affirmative steps to avoid acquiring knowledge of the incriminating facts.)

Although not always spelling out the standard in explicit terms, we have long consistently adhered to this standard. *See, e.g.*, *United States v. Aina-Marshall*, 336 F.3d 167 (2d Cir. 2003); *United States v. Rodriguez*, 983 F.2d 455 (2d Cir. 1993); *United States v. Bahadar*, 954 F.2d 821 (2d Cir. 1992); *United States v. Guzman*, 754 F.2d 482 (2d Cir. 1986), *cert. denied*, 474 U.S. 1054 (1986).

2

Fofanah now argues that *Ferrarini* calls for use of a very different standard. He contends that the instruction may not be given in the absence of evidence that the defendant took *affirmative steps* to avoid knowing the incriminating facts. He appears to argue as well that evidence of actual knowledge is not compatible with an instruction on conscious avoidance. His arguments, however, are based on a misreading of *Ferrarini*.

In *Ferrarini*, our court accepted the argument of defendants Vieira and Kagan that the government had not established a factual predicate for the conscious avoidance charge (although going on nonetheless to affirm their convictions because of the strong evidence of actual knowledge). The reason we found the evidence inadequate to sustain the giving of the charge was that, under our standard, which the *Ferrarini* opinion recited in a manner virtually identical to our later statement of it in *Svoboda*, *see Ferrarini,* 219 F.3d at 154, a showing of a defendant's *actual knowledge* does not justify giving the instruction. There must be evidence capable of supporting a finding "that the defendant was aware of a high probability of the [incriminating] fact in dispute and consciously avoided confirming that fact." *Id.* (brackets omitted). While we found evidence of actual knowledge on the part of Vieira and Kagan, we found no evidence that could support a finding that either defendant was aware of a high probability of the incriminating fact but consciously avoided learning it. We explained, "[T]he only [arguable] factual predicate for conscious avoidance to which the government can point is the evidence that Kagan had actual knowledge of the frauds. . . . [T]he government does not argue, and the evidence does not show, that Kagan deliberately avoided learning the truth." *Id.* at 158. As to Vieira, we similarly explained, "The evidence shows that Vieira actually knew of the frauds; it is not sufficient to permit a finding that he consciously avoided confirming them. The fact that a jury can – on the

3

evidence – find actual knowledge does not mean that it can also find conscious avoidance." *Id.* at 157.

This discussion in *Ferrarini*, properly understood, does not support Fofanah's arguments. It means neither that there must be evidence of *affirmative steps* taken by the defendant to avoid learning the truth, nor that evidence of the defendant's actual knowledge precludes a charge on conscious avoidance. It means only, as we have repeatedly stated in reciting the standard, that there must be evidence from which a jury could find that the defendant was aware of a high probability of the critical incriminating facts and consciously decided to act without confirming them.

What we said in *Ferrarini* does not support Fofanah's argument that the conscious avoidance charge may not be given without a showing of affirmative steps taken by the defendant to ensure that he does not learn the truth. Our statements that the evidence must support a finding that the defendant "consciously" or "deliberately" avoided referred to a requisite state of mind, not to a need for affirmative acts. Conviction on a conscious avoidance theory cannot be justified either by the defendant's failure to try hard enough to learn the incriminating facts or by the fact that the defendant's circumstances "*should have apprised* [the defendant] of the unlawful nature of [his] conduct." *Id.* at 157 (quoting *United States v. Rodriguez*, 983 F.2d 455, 458 (2d Cir. 1993)). The defendant must be consciously aware that, in spite of the apparent high probability that the acts in which he joins are illegal, he does not know the crucial facts. A finding that a defendant's ignorance of incriminating facts was a conscious choice on the defendant's part in no way requires a finding that the defendant took affirmative steps to avoid gaining the knowledge. It does not depend, for example, on the defendant having

4

said, "I don't want you to tell me how you obtained these stacks of neatly bound $100 bills, packed in bags labeled 'Brink's.'"

Apart from the fact that our precedents have not required a showing of affirmative acts designed to avoid acquiring guilty knowledge, such a requirement would make the doctrine ill-suited to its purpose and inconsistent with the habits of well-advised, self-protective criminal conduct. In many types of criminal enterprise, the asking of unnecessary questions and needless volunteering of information are frowned upon because such conduct needlessly subjects all participants to risk of incrimination. When a drug dealer pays a mule $5,000 to deliver an innocuous looking package to a person wearing a Dodgers baseball cap standing next to a blue Audi in a parking lot a few blocks away, he has no need to explain that the package contains cocaine, and the mule generally knows it is better not to ask. One who seeks to sell a hijacked truckload of computers to a fence at a small fraction of the value it would command if the merchandise were legitimate does not volunteer that the goods were hijacked, and the fence does not ask. If judges were to adopt a rule that a charge on conscious avoidance may not be given absent evidence that the defendant took affirmative steps to avoid gaining knowledge of the incriminating facts, the doctrine would cease to function in the very circumstances for which it is most needed. Such a ruling would issue a free pass to dealers in contraband without serving a useful purpose in distinguishing the guilty from the innocent. Protection of careless innocents is provided by the rule that the charge is allowed only when the circumstances will sustain a finding *beyond a reasonable doubt* that the defendant was aware of a high probability of the incriminating fact, but consciously chose to act in furtherance of the venture without learning the incriminating truth, as well as by the content of the instruction.[1][2]

---

[1] The instruction also requires the jury to find that the defendant does not actually believe in a contrary fact. *See*, *e.g.*, *United States v. Sicignano*, 78 F.3d 69, 71 (2d Cir. 1996) (citations

Nor is there merit in Fofanah's further contention that evidence of a defendant's actual knowledge of the incriminating facts precludes a charge on conscious avoidance of those facts. In *United States v. Aina-Marshall*, 336 F.3d 167 (2d Cir. 2003), we upheld the propriety of the conscious avoidance instruction notwithstanding extensive evidence supporting the defendant's actual knowledge that she was transporting illegal drug contraband in her suitcase. (Nor did we require evidence that the defendant took affirmative steps to avoid knowledge of the facts.) There was testimony that (i) when a customs agent moved some of the top-layer items in the defendant's suitcase in a manner that exposed the hidden packages of drugs, the defendant reached in and moved other contents so as to cover once again the exposed packages; (ii) the defendant gave the customs agent an incorrect address for her sister in the United States, even

omitted). We have also emphasized that, to be convicted on a conscious avoidance theory, "the defendant [cannot] be shown . . . merely to have failed to learn [a culpable fact] through negligence." *United States v. Rodriguez*, 983 F.2d 455, 458 (2d Cir. 1993). We have not hesitated to vacate convictions based on an inadequately balanced conscious avoidance charge. *See*, *e.g.*, *United States v. Kaiser*, 609 F.3d 556, 567 (2d Cir. 2010); *United States v. Morales*, 577 F.2d 769, 775 (2d Cir. 1978).

[2] I note that in *Global-Tech Appliances*, the Supreme Court used words that might be construed as confirming the defendant's argument that "the defendant must take deliberate actions to avoid learning of [the culpable] fact." *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2070 (2011). That would be a misunderstanding of the Court's discussion. The discussion arose out of a civil patent infringement claim in which the defendant's liability depended on knowing infringement, and the Federal Circuit had affirmed liability based on a finding of deliberate indifference, *see id.* at 2064-65, a doctrine that has much in common with conscious avoidance or willful blindness. When discussing the willful blindness (or conscious avoidance) doctrine, the Court was merely summarizing what it understood to be the uniform standards approved by the various circuits. It stated that "all [the circuits] appear to agree on two basic requirements, [including that] the defendant must take deliberate actions to avoid learning of that [incriminating] fact." *Id.* at 2070. However, the Court was mistaken in that observation. At the conclusion of the sentence, the Court added a footnote in which it reviewed the requirements of twelve circuits, as expressed in twelve different opinions. In fact, none of the twelve circuit opinions cited called for action on the part of the defendant to avoid learning of the culpable fact. *See id.* at 2070 n.9. What the Supreme Court meant is better revealed by its statement that "defendants cannot . . . deliberately shield[ ] themselves from clear evidence of critical facts that are strongly suggested by the circumstances." *Id.* at 2068-69. Thus, although on superficial reading the Supreme Court's opinion might seem to support Fofanah's argument that deliberate action is required, that would be a misreading, as the Court was merely (mistakenly) summarizing what it understood to be the positions of the various circuits.

6

though she had the correct address on her person; (iii) the defendant gave an extraordinarily implausible explanation for her possession of the suitcase, explaining that she was asked by an old friend in Nigeria (whom she had not seen in 10 years) to bring it to the friend's brother; (iv) the heroin in the suitcase weighed over 50 pounds; and (v) when the customs agent found the packages that contained drugs, the defendant "looked heavenward and shook her head slowly from side to side." *Aina-Marshall*, 336 F.3d at 168-69. Plainly, the holding of *Aina-Marshall*, decided several years after *Ferrarini*, is not compatible with the proposition that evidence of the defendant's actual knowledge of the incriminating facts precludes an instruction on conscious avoidance of knowledge of those facts.

What is determinative is not whether there is evidence in the record of actual knowledge. It is rather whether the evidence can support a finding that the defendant was aware of so high a probability of the incriminating facts that the defendant either knew the truth, or if not, it was because the defendant consciously decided to act without confirming the highly probable incriminating truth. *See Svoboda*, 347 F.3d at 480-81.

Evidence that the defendant knew the incriminating truth does not necessarily support a finding that the defendant, while aware of the high probability of the incriminating fact, consciously closed his eyes to these facts. If, for example, the defendant was charged with knowing possession of stolen computers, and the only evidence bearing on the defendant's knowledge that the computers in his possession were stolen was evidence showing that the defendant himself held up a computer store at gunpoint and stole the computers (or alternatively that the defendant said, "I am trying to sell the stolen computers"), such evidence would powerfully support the defendant's knowledge that the computers were stolen, but would not support the position that the defendant consciously chose not to learn that incriminating fact.

7

Such a record might well sustain the argument that a conscious avoidance charge was not permissible. Thus, in *Ferrarini*, we concluded that, while there was evidence of the defendants' actual knowledge, there was no evidence that could support a finding of the defendants' decision to act while deliberately avoiding learning the truth. *Ferrarini*, 219 F.3d at 157-58. Because of the absence of such evidence, the charge could not be justified.

Nonetheless, as we specifically noted in *Svoboda*, in some circumstances, "the same evidence that will raise an inference that the defendant had actual knowledge of the illegal conduct . . . will also raise the inference that the defendant was subjectively aware of a high probability of the existence of [the incriminating facts]." *Svoboda*, 347 F.3d at 480. In those circumstances, "a defendant's involvement in the criminal offense may have been *so overwhelmingly suspicious* that the defendant's failure to question the suspicious circumstances establishes the defendant's purposeful contrivance to avoid guilty knowledge."[3] *Id.* What follows is that evidence of actual guilty knowledge will sometimes support a conscious avoidance charge and sometimes will not. This turns on whether the evidence supporting guilty knowledge is of such a character that it also supports the proposition that the defendant was aware of a high probability of the incriminating facts, but consciously chose to be blind to the truth. The point of *Ferrarini* is that the propriety of a conscious avoidance charge is not established by the presence of evidence of actual knowledge. If, however, the evidence supporting actual knowledge is of such character that it also supports a finding beyond a reasonable doubt that the defendant was aware of a high probability of the incriminating fact, and nonetheless acted in furtherance of the

---

[3] While our opinions generally speak of "suspicious circumstances" without adding that the suspicious nature of the circumstances must be apparent to the defendant, it seems clear this component was intended and is necessary. Unless the evidence supports the likelihood that the suspicious circumstances were apparent to the defendant, it would not seem to support a theory of conscious avoidance.

venture conscious of his ignorance of the true facts, then evidence tending to show the defendant's knowledge will also support a charge on conscious avoidance. Fofanah's argument that, under *Ferrarini*, evidence of the defendant's knowledge of the incriminating facts precludes a charge on conscious avoidance of them is simply a misreading of the opinion.

The argument is also defective for the further reason that it overlooks the jury's entitlement to accept some evidence and reject other evidence. Even assuming that some of the evidence against Fofanah is of the sort that shows actual knowledge but cannot support a finding of conscious avoidance of actual knowledge, still such evidence would not preclude a proper charge on conscious avoidance, so long as the evidence also included sufficient evidence of the sort that would support a finding of a conscious or deliberate failure to learn the truth. For example, even if some of the evidence against Fofanah was tantamount to an explicit admission by Fofanah that he knew the cars were stolen – evidence which is difficult or impossible to reconcile with a finding of willful, or conscious, blindness – the jury might reject that evidence while accepting other evidence that *is* compatible with a finding of conscious avoidance. In other words, the presence or absence of evidence establishing actual knowledge has no bearing on whether the conscious avoidance charge is appropriate. What matters is whether there is evidence that supports the standard for giving the charge on conscious avoidance, regardless of whether that evidence might also support a finding of actual knowledge. In *Ferrarini,* we concluded there was no such evidence. The impropriety of the charge in *Ferrarini* depended not on the fact that there was evidence of actual knowledge but on the absence of evidence that could support a finding of conscious avoidance.

Our decision in *United States v. Kaplan*, 490 F.3d 110 (2d Cir. 2006), which Fofanah does not cite, comes close to expressly rejecting his argument. Kaplan was convicted of

9

participation in a witness tampering scheme, by a jury, which was charged on conscious avoidance. On his appeal, we agreed with his contention that the charge should not have been given for lack of evidence establishing a factual predicate for the charge (although concluding the error was harmless). Citing *Ferrarini*, we explained that "[e]vidence sufficient to find actual knowledge does not necessarily constitute evidence sufficient to find conscious avoidance." *Id.* at 127. While agreeing with his contention that the charge should not have been given, we explicitly rejected an argument he made – very similar to Fofanah's contention here – "that it was error for the district court to give a conscious avoidance charge when the government argued actual knowledge in the alternative." *Id.* at 128 n.7. We explained:

> Although we noted in *Ferrarini* that evidence sufficient to find actual knowledge does not necessarily establish a factual predicate for conscious avoidance, 219 F.3d at 157, we have held that a conscious avoidance charge is "not inappropriate merely because the Government has primarily attempted to prove that the defendant had actual knowledge, while urging in the alternative that if the defendant lacked such knowledge it was only because he had studiously sought to avoid knowing what was plain." *United States v. Hopkins*, 53 F.3d 533, 542 (2d Cir. 1995). So long as the Government can establish a factual predicate for conscious avoidance, it is free to argue alternative theories of conscious avoidance and actual knowledge.

*Id.*

In other words, there is no incompatibility between proof of actual knowledge and a charge on conscious avoidance. The government is free to pursue both routes simultaneously as alternative theories. Pursuit of the conscious avoidance theory depends on whether the evidence can support the required predicate, regardless of whether the evidence can also support, and the government also argues, actual knowledge. Accordingly, there is no merit to Fofanah's argument that the existence of evidence showing his actual knowledge that the vehicles were stolen precluded the giving of the charge of conscious avoidance. And there is no inconsistency

10

between the standards we espoused in such cases as *Svoboda* and *Aina-Marshall* in upholding the propriety of the conscious avoidance charge, and those which supported disapproval of the charge in *Ferrarini* and *Kaplan*. The different appraisals were attributable to factual differences between the two sets of cases.

The only question as to the propriety of the conscious avoidance charge in this case is whether the evidence, regardless of whether it could or could not support a finding of actual knowledge, could support a finding beyond a reasonable doubt that the circumstances apparent to the defendant were sufficiently suspicious that, if he was ignorant of the highly probable incriminating facts, he acted with conscious awareness of his ignorance. The evidence recited in our *per curiam* opinion as showing that Fofanah actually knew the cars were stolen also, in my view, satisfied the standard for a finding of his conscious avoidance.[4]

---

[4] Many circuits approve charging the jury in this fashion in appropriate circumstances. While the standards among the various circuits are generally in agreement, there are small differences in the terminology used. Some circuits, like ours, use the term "conscious avoidance," while others use "willful blindness." ("Deliberate ignorance" is also used.) The Supreme Court discussed the doctrine with approval in *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2070 (2011), employing the term, "willful blindness" (which appears to be used in a plurality of circuits). In *United States v. Coplan*, 703 F.3d 46 (2d Cir. 2012), and *United States v. Ferguson*, 676 F.3d 260 (2d Cir. 2011), we said that the Supreme Court "appears to now prefer" *willful blindness* over *conscious avoidance*. *Coplan*, 703 F.3d at 89 n.39; *Ferguson*, 676 F.3d at 278 n.16. I do not think this is quite correct. On my reading of *Global-Tech Appliances,* the Supreme Court expressed no preference. It merely noted the currency of both terminologies and used one of them, essentially treating them as equivalents. Nor did the Court advert to any substantive differences that depend on which terminology is used. To the contrary, the Court treated the prerequisites and content of the charge as substantially identical, regardless of which terminology is employed.

In my view, there are potential subtle differences that can flow from those labels, especially to the extent that the labels are employed in the charge itself, or in the definition of the prerequisite standards for its use. I believe there are small disadvantages to each of the two most common formulations, and that a preferable formulation might result from a combination of their elements.

The disadvantage of the term *willful blindness* lies in that the word "willful" ordinarily describes an intentional purpose to achieve a desired result, as opposed to conscious and willing

11

acceptance. Although it is true that in many common instances the defendant as to whom the charge is invoked does intend purposively not to know the incriminating facts, it seems to me the propriety of the charge should not depend on that willful, purposive intention. In some instances, a defendant who enthusiastically joins others in a criminal venture, well aware of suspicious circumstances that support a high probability that the venture is criminal and indeed assuming it to be criminal, but without having been informed by his colleagues of the true incriminating facts, *would like to know* (and perhaps asks unsuccessfully to be told) all the incriminating details – not because his participation would depend on being assured that the venture is lawful, but simply out of curiosity or because he wants to be included as a trusted full partner in the crime. Such a defendant may undertake to build a bomb, forge police credentials, drive the getaway car, etc., doing this at the request of colleagues who refuse his entreaties to be told whether the criminal objective is a murder, a bank or jewelry store heist, an extortion, or the destruction of a facility. The charge (with suitable modifications) should be appropriate for such a willful participant in an obviously criminal venture, notwithstanding that it was his co-criminals' choice, rather than his own, that he remain ignorant of the details. The "willful" in the descriptive label "willful blindness" seems misplaced; the phenomenon the charge should cover is a defendant who joins willfully in a venture that the circumstances show him is obviously criminal (and which he assumes is criminal) while conscious of his ignorance of the criminal details.

The word "avoidance," as a component of the term *conscious avoidance,* seems to me to have the same shortcoming as noted above in the word "willful." One who avoids something has an intention not to encounter or confront it. A defendant who willfully joins others in an obviously criminal venture, who doesn't know what crime he is joining in only because his co-criminals refuse his request for details, is not accurately described as "avoiding" the incriminating information. As for the appropriateness of the charge, there is no good reason to distinguish between the defendant who has chosen not to know the details of the crime he participates in and the defendant who asks his criminal colleagues for the details but they refuse to tell him. The charge should cover the latter defendant as well as the former, so long as he assumes, based on what is obvious, that the venture he is joining in is criminal and he nonetheless willfully participates.

For these reasons, it seems to me that a term combining the best elements of both – something like *conscious blindness*, (or perhaps, forgoing the metaphor, *conscious ignorance*) would be closer to the mark than either *conscious avoidance* or *willful blindness*.