**UNITED STATES of America,**
**Appellee,**

v.

**Bolajoko AINA–MARSHALL,**
**Defendant–Appellant.**

**Docket No. 02–1012.**

United States Court of Appeals,
Second Circuit.

Argued: Jan. 15, 2003.

Decided: July 21, 2003.

Seth L. Levine, Assistant United States Attorney, for Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York (Cecil C. Scott, Seth L. Levine, Assistant United States Attorney, of counsel), Brooklyn, NY, for Appellee.

David Wikstrom, Law Office of David Wikstrom, New York, New York, for Defendant–Appellant.

Before: WINTER, CABRANES, Circuit Judges, and AMON,* District Judge.

WINTER, Circuit Judge.

Bolajoko Aina–Marshall appeals from her conviction after a jury trial before Judge Raggi of importing and possessing heroin with the intent to distribute. Appellant claims that the district court improperly instructed the jury on conscious avoidance as a theory of guilt. We affirm.

## BACKGROUND

On May 6, 2000, appellant arrived at JFK airport, via Zurich, Switzerland, from her home in Nigeria. A Customs agent began to inspect her luggage, finding "aromatic" dried fish and a bag of spices. She removed the bag of spices, leaving open a space revealing that the bottom of the suitcase was covered in black plastic. The agent momentarily turned away. Upon turning back, the agent found that the open space had been "layered very evenly back in the bag" with the dried fish. The agent thereafter discovered bags of heroin at the bottom of the bag. The agent testified that she then made eye contact with appellant, who "looked heavenward and shook her head slowly from side to side." The agent regarded this reaction as note-

---

* The Honorable Carol B. Amon, United States District Judge for the Eastern District of New York, sitting by designation.

worthy because appellant could not have seen the heroin from where she was standing. The heroin weighed 23.227 kilograms (more than 50 pounds) and had a wholesale value of $1.8 to $2.3 million and a retail value of $6.9 to $13.9 million.

Appellant was the sole defense witness. She testified that she frequently traveled to the United States to purchase goods for her retail housewares business in Lagos and had been unaware of the heroin in her luggage. She testified that prior to her departure from Nigeria to the United States on the trip in question, she became reacquainted with an old friend, Funmi Odumosu, whom she had not seen in 10 years. Upon learning that appellant would soon be traveling to the United States on business, Odumosu asked whether appellant would be willing to deliver a message to her brother, who lived in the United States. Appellant agreed. On the day of appellant's departure, Odumosu appeared with a bag full of "food stuff" for her brother to sell in the United States. Appellant also testified that Odumosu gave her a slip of paper with the name "Larry" on it and a telephone/beeper number where he could be reached. Appellant claimed that she queried Odumosu about the weight of the bag (approximately 60 pounds), and asked her to open it. Appellant stated that she saw "a lot of [dried] fish and some nylon bags," and that Odumosu informed her the nylon bags contained spices.

In support of her contention that she had been unaware of the heroin, appellant noted that her behavior was inconsistent with that of a smuggler. For example, she had declared $45,000 in currency, which, according to her testimony, had always resulted in her luggage being searched, and had helped hoist her bag onto the inspection belt. On rebuttal, the government presented evidence that appellant's luggage had been searched only twice in the course of five trips between 1999 and 2000.

On cross-examination of appellant, the government elicited several incriminating facts. Appellant had failed to list the fish and spices on her Customs declaration even though she was aware that food had to be declared. The government also noted that appellant had provided her sister's address on the Customs declaration, even though her sister had moved from this address several years earlier. The old address was doubly incriminating because the government showed that the sister's present address was listed both in appellant's address book, which was seized at the time of arrest, and on several furniture invoices that appellant had placed into evidence.

At the charging conference, the government requested a conscious avoidance instruction. Appellant's counsel contended that the instruction was unwarranted because there was no evidence to suggest that appellant had an awareness of a "high probability" that she was carrying drugs. The district court disagreed, pointing out that the circumstances were such that appellant may have "closed her eyes to [what] she should have otherwise understood." The district court noted the following factors as grounds for giving a conscious avoidance instruction: a woman she had not seen in ten years suddenly asks her to take a heavy bag to New York; the foodstuffs, which allegedly were to be sold in the United States, were not packed for sale; one would not normally transport loose dried fish; and the contact information for "Larry" consisted only of a first name and a telephone/beeper number. In the court's view, these events should have raised questions in appellant's mind as to the nature of the items that she was being asked to transport.

·The relevant portions of the instruction given were:

In considering the issue of knowledge, you should further be aware that under the law this element can be satisfied by inferences drawn from proof that a defendant deliberately closed her eyes to what would otherwise have been obvious to her. . . .

If you find from all the evidence beyond a reasonable doubt that the defendant was aware of a high probability that drugs were hidden in her luggage, but deliberately closed her eyes to that probability, you may treat this deliberate avoidance of positive knowledge as the equivalent of knowledge. I emphasize, however, that knowledge cannot be established merely by showing negligence or even foolishness on the part of the defendant.

In other words, you may find that the government has satisfied its burden of proving knowledge if you find either; one, that the defendant actually knew the drugs were in the luggage; or, two, that she deliberately closed her eyes to and ignored what she had every reason to believe was the fact.

Now, on the other hand, if you find that the defendant actually believed that there were no drugs in the luggage, then this element of the offense would not be satisfied.

The jury found appellant guilty of importing heroin into the United States, in violation of 21 U.S.C. §§ 952(a) and 960(b)(1), and possession of heroin with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). Appellant appeals, arguing that the district court erred in instructing the jury on conscious avoidance in light of our decision in *United States v. Ferrarini*, 219 F.3d 145 (2d Cir. 2000).

## DISCUSSION

■ We review a claim of error in jury instructions *de novo*, reversing only where, viewing the charge as a whole, there was a prejudicial error. *United States v. Tropeano*, 252 F.3d 653, 657–58 (2d Cir.2001). Appellant does not claim that the content of the conscious avoidance instruction was error. Rather, appellant's sole claim on appeal is that the conscious avoidance instruction should not have been given because there was no evidence to support the conclusion that appellant had consciously avoided learning of the bag's contents.

We have held that a conscious avoidance instruction may be given only (i) when a defendant asserts the lack of some specific aspect of knowledge required for conviction, *United States v. Civelli*, 883 F.2d 191, 194 (2d Cir.1989), and (ii) the appropriate factual predicate for the charge exists, *i.e.*, the evidence is such that a rational juror may reach the conclusion "beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact," *United States v. Rodriguez*, 983 F.2d 455, 458 (2d Cir.1993). *See also Ferrarini*, 219 F.3d at 154 ("A conscious avoidance instruction permits a jury to find that a defendant had culpable knowledge of a fact when the evidence shows that the defendant intentionally avoided confirming the fact."); *United States v. Gabriel*, 125 F.3d 89, 98 (2d Cir.1997) (" 'A conscious-avoidance instruction is appropriate when a defendant claims to lack some specific aspect of knowledge necessary to conviction but where the evidence may be construed as deliberate ignorance.' ") (quoting *United States v. Beech–Nut Nutrition Corp.*, 871 F.2d 1181, 1195 (2d Cir.1989)) (internal citations omitted in *Gabriel* ).

We have emphasized that a conscious avoidance instruction should be issued only where it can be shown that the defendant "*decided* not to learn the key fact, not merely ... failed to learn it through negligence." *Rodriguez*, 983 F.2d at 458 (emphasis in original). We have likewise held that a court may not give a conscious avoidance charge if the evidence does not support it, but that an unwarranted conscious avoidance instruction is harmless error where there is "overwhelming evidence" of actual knowledge. *Ferrarini*, 219 F.3d at 157.

■ There was no error here in giving a conscious avoidance instruction. Indeed, appellant's own testimony provided the grounds for giving that instruction. When a defendant charged with knowingly possessing contraband items takes the stand and admits possession of the contraband but denies having known of the nature of the items, a conscious avoidance charge is appropriate in all but the highly unusual—perhaps non-existent—case. Having admitted possession of contraband but having denied knowledge of its nature, the defendant herself has directly put in issue whether the circumstances were such as to alert her to a high probability that the goods were contraband and what steps she took to learn of the extent of that danger.

Such testimony and supporting argument by counsel pose an issue of fact to be resolved by the jury regarding the relative credibility of the prosecution's evidence and the defendant's version. In most such cases, the evidence will allow a reasonable jury to find either: (i) the defendant knew she was carrying contraband; (ii) the defendant genuinely (although perhaps negligently) believed she was not carrying contraband; or (iii) the defendant knew of the high probability that she was carrying contraband but deliberately avoided learning of the exact nature of the goods. Unless a defendant's testimony and supporting evidence are so strong as to call for a directed verdict in her favor, the defendant has no right to object to the jury being told that outcome (iii) would call for a guilty verdict.

■ Viewed in that light, therefore, appellant's present claim is little more than a challenge to the sufficiency of the evidence to support a conscious avoidance conviction. A defendant challenging a conviction based on insufficient evidence bears a heavy burden. *United States v. Tocco*, 135 F.3d 116, 123 (2d Cir.1998). In considering such a challenge, we review all the evidence presented at trial "in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government." *United States v. Hernandez*, 85 F.3d 1023, 1030 (2d Cir.1996). A conviction will be affirmed so long as "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original). For the reasons cited by the district court and detailed above, there was easily sufficient evidence to permit the inference that appellant consciously avoided learning that she was transporting heroin in her luggage.

In arguing otherwise, appellant, as noted, relies entirely upon our decision in *Ferrarini*. In particular, she argues that, under the standard set out in *Ferrarini*, there was no factual basis in the present case for finding that she deliberately avoided learning of the contents of the luggage given her by Odumosu. In that regard, she notes that she inquired about the contents of the bag, looked in it, but was deceived by Odumosu's lies. This set of facts, she argues, "is precisely like that theorized in *Ferrarini*" (Appellant's Br. at 11) where the court stated (in a passage

described by appellant's counsel at oral argument as *dicta* ) that a conscious avoidance charge should not be given "where there was only equivocal evidence that the defendant had actual knowledge and where there was no evidence that the defendant deliberately avoided learning the truth." *Ferrarini,* 219 F.3d at 157. Whether this passage even says what appellant construes it to mean is doubtful, but *Ferrarini* is in any event entirely distinguishable.

In *Ferrarini,* the gravamen of the government's evidence showed the defendant's direct participation in acts that could not have been undertaken without guilty knowledge. A jury finding that the defendants lacked such knowledge—outcome (ii) above—would have to have been accompanied by a finding that the defendants had not committed those acts and therefore had not participated in the charged conspiracy. A guilty verdict based on outcome (iii)—conscious avoidance of the criminal goals of the conspiracy—was thus not a reasonable option because the knowledge element of the government's case was not separable from the participation element. In the present matter, guilty knowledge was clearly separable from the other elements of the crime because appellant conceded possession of luggage containing heroin with an explanation denying knowledge of the contents and therefore provided an ample basis for giving a conscious avoidance charge.

We affirm.