SUMMARY ORDER
Hafiz Muhammad Zubair Naseem appeals his conviction for conspiracy to commit securities fraud and twenty-eight substantive counts of securities fraud as well as the resulting sentence. We assume the parties’ familiarity with the facts, proceedings below, and specification of issues on appeal.
*22 Naseem’s first trial ended in a mistrial declared after the jury was selected and sworn but before any testimony had been heard. Naseem claims that subjecting him to a second trial violated the Double Jeopardy Clause. A defendant may not be twice subjected to jeopardy for the same offense. United States v. Razmilovic, 507 F.3d 130, 136 (2d Cir.2007). Jeopardy attaches when the jury is sworn, and unless the defendant consented to the mistrial, a second trial is barred absent a showing that the original mistrial was compelled by “manifest necessity.” Id. We review a finding of “manifest necessity” for abuse of discretion. See id. at 137. Where the mistrial was based on potential juror bias, the degree of deference owing to the trial court is especially high. See Arizona v. Washington, 434 U.S. 497, 510-14, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978).
We find no abuse of discretion in this case primarily because (1) the issue was one of potential juror bias and/or the appearance of juror bias, see id.; (2) no testimony had been taken, see United States v. Gentile, 525 F.2d 252, 256 n. 2 (2d Cir.1975) (holding that a trial court is permitted to consider “the length of [a defendant’s] exposure at the first trial” when determining whether a mistrial should be declared); (3) both the defense and the prosecution, at different times, expressed concern about whether two jurors, one of whom had spoken to a friend of defendant’s while waiting to be interviewed as a juror and later learned that this person was somehow associated with the defendant, could be impartial; (4) although defense counsel indicated a preference for proceeding without the two jurors, which would leave twelve jurors and one alternate, or with a jury that included the two jurors, he acknowledged that based on the record, the court could make findings justifying a mistrial, see id. at 255 (holding that even where a defendant does not consent to a mistrial, his contribution to causing it may be considered in determining whether the district court abused its discretion); and (5) as the trial court recognized, at the time of the first trial, the Christmas holidays were fast approaching, making it possible that additional jurors would be lost. We recognize that the trial court erred in believing that the juror who talked with Naseem’s friend had already been selected for the jury and cautioned by the district court against such conversations, but do not consider this fact significant in light of the court’s clear reliance on the factors already cited, which amply justify its decision.
We also reject Naseem’s challenge to the sufficiency of the evidence to support each count of conviction. We may reverse for insufficiency “only if no rational factfinder could have found the crimes charged proved beyond a reasonable doubt.” United States v. Gaskin, 364 F.3d 438, 459-60 (2d Cir.2004) (citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). “[W]e must review the evidence in the light most favorable to the government, drawing all reasonable inferences in its favor.” Id. Further, the jury may base its verdict on circumstantial evidence. United States v. D’Amato, 39 F.3d 1249,1256 (2d Cir.1994).
The government premised its prosecution on the “misappropriation theory” of insider trading, which requires proof that “a person [has traded] while in knowing possession of material, non-public information that has been gained in violation of a fiduciary duty to its source.” United States v. Cusimano, 123 F.3d 83, 87 (2d Cir.1997). The government alleged that Naseem, an investment banker in the United States, provided advance information concerning pending mergers and acquisitions to his long-time friend and co-defendant, Ajaz Rahim, an investment banker in Pakistan. Naseem ^oes not *23 question his fiduciary duty to his employer or his knowledge that he was not allowed to disclose non-public information concerning acquisitions and mergers. Rather, he contends that there is insufficient proof that he disclosed such information. We disagree based on the following evidence, which the jury could have credited: (1) with respect to each of the stocks referenced in the indictment, there was proof either that a call was made to Rahim from Naseem’s phone or his secretary’s phone shortly before a purchase that later resulted in a substantial profit to Rahim, or that Naseem accessed documents concerning the proposed merger or acquisition that he had no legitimate reason for accessing shortly before Rahim’s purchase, and in many cases there was proof of both; (2) Naseem opened a trading account in a Pakistani bank and instructed the bank that “Ajaz,” Rahim’s first name, would manage the account; (3) Naseem and Ra-him had a longstanding relationship, which involved a similar pattern of phone calls and transactions at a different bank; and (4) the investment bank in which Naseem worked had an “open” environment, and Naseem was observed looking at papers on other bankers’ desks during the time one of the acquisitions was pending.
There also was no abuse of discretion in the district court’s admission of evidence concerning Naseem and Rahim’s similar conduct while Naseem was employed at a different bank. First, the court did not err in rejecting Naseem’s claim that he was not given timely notice of the government’s intention to offer the evidence. Naseem misconstrues the record when he argues that the judge presiding at the first trial gave the government a firm deadline for identifying prior bad act evidence that it intended to introduce. The discussion Naseem references was limited to evidence of bank transfers and did not include prior bad acts. Thus, the only requirement in effect was that the government give “reasonable notice in advance of trial” of its intent. Fed.R.Evid. 404(b). The government did so. It produced the relevant trading records prior to the first trial, and one week prior to the second trial, it notified defendant that it might argue at trial, based on these records, that the government had shown that Naseem and Rahim engaged in insider trading prior to the charged offenses. While there is no proof that the government notified Naseem of its intent to call one particular witness concerning the prior uncharged offense, the general notice given was sufficient.
On the merits, the evidence of Na-seem and Rahim’s activities with respect to Naseem’s prior employer was properly admitted because it was relevant information of “the background of the conspiracy charged and [the development of] the illegal relationship between participants in the crime.” United States v. Rosa, 11 F.3d 315, 334 (2d Cir.1993). Further, the evidence tended to show “absence of mistake or accident” within the meaning of Rule 404(b). In addition, the evidence was not more sensational than the evidence of the charged crime and did not consume a major portion of the trial time. Therefore, there was no unfair prejudice to the defendant. See United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir.1990).
We have considered Naseem’s remaining challenges to the trial court’s eviden-tiary rulings — that the court unduly restricted Naseem’s expert’s evidence and that it improperly admitted certain emails — and found that each of the challenged rulings was well within the district court’s discretion.
Naseem also contends that the government failed to honor its obligations under Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and Federal Rule of Criminal Procedure *24 16(a)(1)(E) by failing to inform him prior to trial that an attorney for a couple who had purchased four of the charged securities at times close to Rahim’s trades in the same securities had proffered to the government that this couple received their information from an individual who, in turn, received his or her information “from a high level investment banker in Pakistan.” Naseem claims that this information was potentially exculpatory because it would have enabled him to show that another potential source of information existed. This argument fails because (1) Ra-him was a high-level investment banker in Pakistan, suggesting that the evidence that the information on the mergers and acquisitions came from a high-level investment banker was hardly exculpatory by itself; (2) it is extremely speculative to assume that Rahim could have obtained the identity of the investment banker from the couple’s attorney because there is no indication that the attorney knew who this investment banker was and, in any case, the attorney owed a duty of confidentiality to his clients; and (3) the only people who knew from personal knowledge whether there was another tipper were the husband and wife, and Naseem’s attorney knew their identity prior to trial.
Naseem also seeks reversal based on the allegedly improper comments made by the Assistant United States Attorney during his rebuttal summation. A jury’s verdict can be reversed based on prosecutorial misconduct only if “the misconduct alleged [was] so severe and significant as to result in the denial of [the defendant’s] right to a fair trial.” United States v. Rahman, 189 F.3d 88, 140 (2d Cir.1999). In determining whether reversal is required, we must consider “the severity of the misconduct, the measures adopted to cure it, and the certainty of conviction in the absence of the misconduct.” United States v. Shareef, 190 F.3d 71, 78 (2d Cir.1999). As to the prosecutor’s comments suggesting that the money from the scheme was in Pakistan and that the defendants “hit the jackpot nine times,” we perceive no impropriety on the government’s part because evidence supported the government’s claim that the money was in Pakistan and Naseem’s opening of an account in Pakistan to be managed by Rahim, even if that account was never funded, suggested that he intended to profit from the scheme. As to the last comment, that Naseem’s conduct “victimize[d] the people who have 401Ks and pension plans that are invested in the stock market,” the court very quickly instructed the jury that “you should not consider whether or not there would have been any effect on a 401K plan or pension plan. There is no evidence that there is or would have been any effect on either of these entities’ rolls.” Given the very specific nature of the curative instruction and the isolated nature of the comment, reversal is not required.
Nor is their merit to Naseem’s contention that the district court erred by giving a conscious avoidance charge. A conscious avoidance charge is proper where the defendant asserts lack of a specific aspect of knowledge necessary for conviction and “the evidence is such that a rational juror may reach the conclusion beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact.” United States v. Aina-Marshall, 336 F.3d 167, 170 (2d Cir.2003) (internal quotation marks omitted). Naseem’s counsel suggested that there was no proof that Naseem understood (1) that the documents he accessed contained material information, or (2) that Rahim was trading based on the information Na-seem gave him. In addition, there was sufficient proof that Naseem was aware of a high probability of the disputed facts. *25 He was an investment banker and thus would have been aware of the materiality of information concerning mergers and acquisitions, and he knew Rahim well enough to allow him to trade for him, which suggests that he also was aware of a strong likelihood that Rahim would trade on the information he received. Thus, the conscious avoidance instruction was proper.
Finally, Naseem contends that he was denied due process at sentencing because the district court misapprehended facts concerning his daughter’s needs, his receipt or intended receipt of benefits from the charged scheme, and his risk of recidivism. We have reviewed the record of the sentencing and pre-sentence submissions and find no such misapprehension.
We therefore affirm the judgment of the district court.