*United States v. Espino*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.   WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").   A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of September, two thousand twenty-two.

PRESENT:

> GUIDO CALABRESI,
> GERARD E. LYNCH,
> RICHARD J. SULLIVAN,
> *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

   *Appellee*,

 v.            No. 21-1412

RAFAEL ESPINO,

   *Defendant-Appellant*.*

_____

_____

* The Clerk of Court is respectfully directed to amend the caption as set forth above.

**FOR DEFENDANT-APPELLANT:**     SARAH BAUMGARTEL, Federal Defenders of New York, Inc., Appeals Bureau, New York, NY.

**FOR APPELLEE:**     LOUIS A. PELLEGRINO (Dominic A. Gentile, Karl Metzner, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Charles R. Breyer, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Rafael Espino appeals from his judgment of conviction following a jury trial in which he was found guilty of conspiracy to distribute and possess with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 846. Espino contends that there was insufficient evidence to sustain his conviction and that two aspects of the district court's jury instructions were erroneous. Because

we hold that sufficient evidence supported Espino's conviction and that the district court adequately instructed the jury, we affirm.

On May 30, 2018, Indiana State Police officers stopped a car driven by Oscar Fabian Garcia-Diaz and seized two duffel bags containing twenty kilograms of heroin, with a street value of approximately $2 million. After telling the officers that he was traveling to New York to deliver the drugs at a Ramada Inn in the Bronx, Garcia-Diaz agreed to work with agents from the United States Drug Enforcement Administration (the "DEA"), who arranged for a controlled delivery of sham drugs at the Ramada. On the day of the controlled delivery, Garcia-Diaz informed his co-conspirator in Mexico that he had secured Room 126 at the Ramada – a room that did not exist at that hotel.

About an hour later, Espino arrived at the hotel in a dark vehicle, carrying a nearly empty roller suitcase and a small bag. Espino proceeded to the reception desk and asked for Room 126, at which point Garcia-Diaz introduced himself to Espino and explained that the room was not yet ready. After expressing annoyance at this development, Espino directed Garcia-Diaz to help him carry the two duffel bags – containing twenty kilograms of sham heroin – to his car. Garcia-Diaz agreed, whereupon Espino left the lobby toting one of the bags and a

roller suitcase, which he placed in the back of a white Honda Pilot. At that moment, a DEA agent approached Espino, who attempted to walk away before he was arrested.

At trial, Espino's counsel argued to the jury that Espino had no connection to the drug operation, and that he did not know that the object of the conspiracy was to traffic narcotics, as opposed to some "other type of contraband," such as "stolen property or counterfeit goods." J. App'x at 461; *see United States v. Anderson*, 747 F.3d 51, 66 (2d Cir. 2014) (explaining that a conviction for conspiracy to possess or distribute narcotics requires the government to prove that the defendant knew "that he was participating in an illicit activity" and that "the illicit activity involved a controlled substance"). As part of this defense, Espino elicited testimony that a search of his phone revealed no contacts between him and Garcia-Diaz or Garcia-Diaz's co-conspirator in Mexico.

At the charge conference before summations, Espino requested an instruction that he could "not be convicted if the government's proof only establishes that he engaged in suspicious behavior without proof that he [had knowledge] that his conduct involved narcotics." J. App'x at 357. The district

4

court declined to give that particular instruction, and instead instructed the jury that it could

> find that the defendant acted knowingly if [it] find[s] beyond a reasonable doubt that the defendant was aware of a high probability that drugs were in the duffel bags and deliberately avoided learning the truth.   [It] may not find such knowledge, however, if [it] find[s] that the defendant actually believed that no drugs were in the duffel bags, or if [it] find[s] that the defendant was simply negligent, careless, or foolish.

J. App'x at 439.

The jury convicted Espino, and the district court denied his motions under Rules 29 and 33 of the Federal Rules of Criminal Procedure for a judgment of acquittal and a new trial, respectively.   Espino timely appealed.

## I.   Sufficiency of the Evidence

"A defendant seeking to overturn a jury verdict on sufficiency grounds bears a 'heavy burden,'" because this Court will "uphold the conviction if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."   *Anderson*, 747 F.3d at 59 (quoting *United States v. Aguilar*, 585 F.3d 652, 656 (2d Cir. 2009)).   A sufficiency challenge entails assessing the evidence "in its totality, not in isolation," *United States v. Huezo*, 546 F.3d 174, 178 (2d Cir. 2008) (quoting *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000)),

5

and "in a light that is most favorable to the government, . . . with all reasonable inferences resolved in favor of the government," *United States v. Persico*, 645 F.3d 85, 104 (2d Cir. 2011) (quoting *United States v. Eppolito*, 543 F.3d 25, 45 (2d Cir. 2008)).

"To sustain a conspiracy conviction, the government must present some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it." *Anderson*, 747 F.3d at 60 (internal quotation marks omitted). In connection with drug-conspiracy charges, "[p]roof that the defendant engaged in suspicious behavior, without proof that he had knowledge that his conduct involved narcotics, is not enough to support his conviction for conspiracy to traffic in narcotics." *United States v. Torres*, 604 F.3d 58, 66, 69–70 (2d Cir. 2010). Espino challenges the sufficiency of the evidence only with respect to this last element: that he had knowledge that the conspiracy involved drugs.

But the evidence was plainly sufficient for the jury to conclude that Espino knew the criminal purpose of the conspiracy. First, when he arrived at the Ramada, Espino asked for the fictitious Room 126, supporting the inference that

6

he had contact with a member of the conspiracy. This inference is particularly strong since Espino arrived shortly after Garcia-Diaz texted his co-conspirator in Mexico that he had secured Room 126. Second, Espino arrived at the hotel with empty bags large enough to hold twenty kilograms of heroin. Luggage of that size would have been unnecessary to transport many other types of contraband, such as stolen diamonds or child pornography, which could be transported in a smaller bag, or even a pocket – further supporting the inference that Espino knew he was there to transport a substantial amount of drugs. Third, based on the surveillance video of Espino leaving the hotel with the duffel bag and rolling suitcase, the jury was certainly free to infer that Espino knew what he was carrying.

Furthermore, given the value of the drugs at issue, the jury could have also convicted Espino under a theory that he was a trusted member of the conspiracy and that he therefore knew the conspiracy's criminal purpose. We have held that "jurors may infer a defendant's knowledge of the object of a conspiracy" when there is "evidence of a trust relationship between the defendant and other conspirators." *Anderson*, 747 F.3d at 69. A trust relationship can be inferred based on circumstantial evidence, such as the fact that "drug dealers would be

very unlikely to confide hundreds of thousands of dollars' worth of drugs to the sole control of a person who was not a trusted member of the conspiracy." *Id.* at 66.

Here, there was ample evidence for the jury to conclude that there was a trust relationship between Espino and the co-conspirator in Mexico. First, Espino arrived at the Ramada alone to retrieve what the co-conspirator in Mexico understood to be $2 million worth of heroin. Espino's sole control over such an enormous quantity of drugs was alone sufficient to permit the jury to conclude that he was a trusted member of the conspiracy.[1] Second, when Espino learned that Garcia-Diaz had failed to secure a room at the Ramada, Espino unilaterally changed the plan and took possession of the duffel bags in the lobby – a degree of authority that further supports a finding that Espino held a position of trust in the conspiracy. From these facts and inferences, the jury could have reasonably concluded that Espino had "knowledge of the nature of the conspiracy, i.e., distributing illegal drugs." *Anderson*, 747 F.3d at 66.

---

[1] Espino's exclusive control over the drugs also distinguishes this case from *Torres*, where we directed an acquittal for insufficient evidence of knowledge in part because the defendant "was never in a position to be alone with the [p]ackages" containing the drugs. 604 F.3d at 71.

In sum, viewing the "totality" of the evidence, *Huezo*, 546 F.3d at 178, in the "light that is most favorable to the government," *Persico*, 645 F.3d at 104 (internal quotation marks omitted), we hold that a rational juror could have concluded beyond a reasonable doubt that Espino knew the contraband at issue was narcotics.   We thus reject Espino's challenge to the sufficiency of the evidence.

## II.   The District Court's Jury Instructions

Espino's challenges to the district court's jury instructions are also unavailing.   "[A] criminal defendant is entitled to instructions relating to his theory of defense, for which there is some foundation in the proof."   *United States v. Dove*, 916 F.2d 41, 47 (2d Cir. 1990).   But we will vacate a conviction for failure to give a requested instruction only when the proposed "instruction is legally correct, represents a theory of defense with basis in the record that would lead to acquittal, and the theory is not effectively presented elsewhere in the charge."   *United States v. Doyle*, 130 F.3d 523, 540 (2d Cir. 1997) (internal quotation marks omitted).

Espino requested an instruction that he could not be convicted without proof that he knew the conspiracy involved narcotics *specifically*, as opposed to some other unlawful purpose.   But even assuming that Espino's requested

9

instruction was legally correct and represented a theory of defense based in the record that would lead to acquittal if believed, the record is clear that Espino's defense was fairly presented elsewhere in the district court's charge. The district court instructed the jury that "the government must prove each of the following elements beyond a reasonable doubt: [f]irst, beginning on or about May 2018, there was an agreement between two or more persons to distribute heroin; and [s]econd, the defendant joined in the agreement *knowing of its purpose* and intending to help accomplish that purpose." J. App'x at 436 (emphasis added). We are hard pressed to see how the district court could have more clearly conveyed Espino's desired instruction that he must have known of the specific illicit purpose of the alleged conspiracy. The district court was not required to give Espino's formulation of this instruction in addition to the perfectly adequate one that it gave.

Espino also challenges the district court's conscious-avoidance instruction. Under the doctrine of conscious avoidance, a jury may infer the defendant's knowledge of a particular fact when "the evidence is such that a rational juror may reach the conclusion beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that

fact." *United States v. Ferrarini*, 219 F.3d 145, 154 (2d Cir. 2000) (quoting *United States v. Rodriguez*, 983 F.2d 455, 458 (2d Cir. 1993)) (alterations omitted).   Espino argues that (1) there was no basis for a conscious-avoidance charge as a matter of law because mere knowledge does not amount to the requisite specific intent to join a conspiracy, and (2) there was no factual basis for a conscious-avoidance charge because nothing in the record supported an inference that he acted deliberately to avoid confirming that the contraband was drugs.   Neither argument persuades us.

First, a conscious-avoidance instruction is legally appropriate when a defendant challenges his knowledge of the object of the alleged conspiracy. *Ferrarini*, 219 F.3d at 154.   Such is the case here.   Indeed, whether Espino had knowledge of the conspiracy's purpose lies at the very heart of his appeal.   *See United States v. Eltayib*, 88 F.3d 157, 170 (2d Cir. 1996) (explaining that "if the defendant's participation in the conspiracy has been established, conscious avoidance may support a finding with respect to the defendant's knowledge of the objectives or goals of the conspiracy"); *see also United States v. Reyes*, 302 F.3d 48, 54 (2d Cir. 2002) (same).

11

Second, there was a sufficient factual predicate for a conscious-avoidance instruction on the facts before the jury. "When a defendant charged with knowingly possessing contraband items takes the stand and admits possession of the contraband but denies having known of the nature of the items, a conscious avoidance charge is appropriate in all but the highly unusual – perhaps non-existent – case." *United States v. Aina-Marshall*, 336 F.3d 167, 171 (2d Cir. 2003). To be sure, Espino did not take the stand here. But no one disputed that Espino had possession of the sham narcotics, and Espino only denied knowing "the nature of the items." *Id.* Because we see no reason why this case should fall into the narrow, "perhaps non-existent" exception that *Aina-Marshall* contemplated, the conscious-avoidance instruction was appropriate. *Id.*

Finally, Espino argues that the conscious-avoidance doctrine requires him to have taken some "deliberate action[]" to avoid learning a relevant fact, Reply Br. at 16, and that there was no factual basis for inferring a deliberate action in this case. But a conscious-avoidance charge may also be given when "a defendant's involvement in the criminal offense may have been so overwhelmingly suspicious that the defendant's failure to question the suspicious circumstances establishes the defendant's purposeful contrivance to avoid guilty knowledge." *United*

12

*States v. Kozeny*, 667 F.3d 122, 134 (2d Cir. 2011) (internal quotation marks omitted).

Surely, the jury was entitled to conclude that the circumstances here were sufficiently suspicious that Espino's failure to question or investigate them was indicative of a "purposeful contrivance to avoid guilty knowledge." *Id.* (internal quotation marks omitted).

Because the district court appropriately conveyed the substance of Espino's requested instruction regarding the knowledge the jury was required to find, and there was adequate factual and legal basis for a conscious-avoidance charge, the district court did not err in either of the instructions Espino challenges.

\* \* \*

We have considered Espino's remaining arguments and found them to be meritless. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court